Good morning ladies and gentlemen. Thank you for being in Oregon. I am delighted to be here in Oregon with my two Oregonian members of the panel and this is the time for argument in Blanchard v. Morton School District and the plaintiff may, appellant may proceed. Your Honor, if I might, I'm having a little difficulty hearing you. I'm sorry. I'm having a little difficulty myself with allergies. So it's the time for argument and you may proceed. Thank you. May it please the Court, my name is Lonnie Davis. I'm representing the appellant, Ms. Blanchard, in this case. I'd like to reserve ten minutes for rebuttal, if I might. Your Honors, we are here for a second time before this Court on an issue arising out of a pro se complaint alleging a 1983 action against the Morton School District. This time, on this appeal, the Morton School District filed a motion for summary judgment alleging essentially two things. That Ms. Blanchard, as a parent of a child in a special education program, had no independent right of action, no independent rights that she could pursue. And secondly, that the enforcement scheme created by IDEA, the Individual Disabilities Education Act, was comprehensive and preempted an action under 1983. We submit that on both counts, both of which were upheld by the District Court, that on both counts, Your Honors, the trial court erred. And we ask this Court to reverse that decision and remand it. I find myself in a somewhat unusual posture here in arguing a case in which the most significant precedence came down after briefing was concluded. In particular, I refer to the case of Winkleman v. Karma School District decided by the U.S. Supreme Court in May of this year that expressly and quite clearly establishes that parents do, in fact, have individually enforceable rights. But the case didn't suggest that they have rights to absolutely anything they want to do. As I read it, I'm looking at page 2005, the court concludes that parents have independent enforceable rights to procedural matters, reimbursement-related matters, and obtaining a free and appropriate public education for their child. In this case, the current claim, excuse me, is none of those things. So why is it that, in your view, Winkleman creates this particular, or why the statute creates the particular kind of claim that you're making? I don't think Winkleman in and of itself gets us to where we ask the Court to go, Your Honor. I think it establishes one facet, that is, the individually enforceable rights. Then I think you need to turn back to this Court's prior decision, which it clearly held that the IDEA remedies were not something that Ms. Blanchard could use in this case, and the Court held that IDEA is not the exclusive bar to all other statutory rights. So it's at that part of the argument. When did we hold that? Your Honor? When did we hold that? That was in this Court's prior decision in Blanchard. Well, didn't we specifically reserve and not rule about whether the claims were valid? No, but all we dealt with was the question of exhaustion of remedies, and we did not say anything about whether these claims are viable. Your Honor, yes, I think you're correct. But I would point out two things. This Court did say that IDEA does not provide an adequate remedy for Ms. Blanchard, and this Court also said that IDEA does not restrict rights under other statutes. So those questions were left open. I acknowledge that. But I think that those statements by this Court move in the direction of allowing us to argue that IDEA does not preclude the possibility of a 1983 action in this case. Well, the 1983 action has to be based on something. Yes, Your Honor, it does. Now, is it based here on a violation of IDEA? It is based on a violation of IDEA for which IDEA provides no remedy at all. The administrative process So what is it that causes you to believe that Congress intended, through any mechanism, that your client be able to obtain the monies that she is seeking here? Congress has to intend it if it's a statutory right. So where does Congress suggest that she's entitled to be compensated for her time and effort in obtaining the appropriate remedy for her child? I think, Your Honor, the answer to that question is really the mirror image of what you asked. The assumption in this ‑‑ in the courts of this country are that all remedies are available unless something specifically rules it out. That's not the rule in statutory claims. Congress has to have intended that a claim exist before it exists. That's correct, Your Honor. But it is presumed that Congress so intended unless something specifically says that it's contrary. What case do you cite for that proposition? I mean, it seems to me that if you read Gonzaga and the other cases that deal with private rights of action, they do not proceed from that assumption. Your Honor, I'm sorry. I can't cite a specific case to you. I will look at my materials and I hope have that available for you in rebuttal if I could. But it is my understanding of the law, Your Honor, that IDEA does not preclude other rights of action. I think this Court has so held in the Witt case where 1983 action was allowed to proceed. And I think that the rationale for decisions that have allowed 1983 is that we have situations where the plaintiff is not attempting to circumvent the IDEA remedies. It's clearly established that that's not permissible. That when IDEA remedies are available and provide some measure of redress to a plaintiff, they have to be used. But there are cases like this one where IDEA provides a right, in this case a right to misbranch or is a parent of a child, but does not provide a remedy. Because there is no remedy, she doesn't have to exhaust the administrative procedures that would otherwise be required. But when the injury is not remediable at all by IDEA, then the courts have said there is this other procedure that may be invoked to address injuries that IDEA simply doesn't provide a remedy for. But Gonzaga says that there has to be an unambiguously conferred right to support a cause of action under 1983. So I guess the problem, what we're groping for is where is that unambiguous right to these tort damages, you say? I think the Winkleman case addresses that, Your Honor. It cites a number of provisions in IDEA which, taken together, create rights. None of them refer to damages for pain and suffering and for loss. I'm sorry, Your Honor. None of them refer to pain and suffering damages or lost income or anything like that for the parent. It's quite meticulous, as I read it, in going through the substantive procedural rights. And I don't see anything that really resembles what you're arguing here. Can you point me to where that is? I cannot, Your Honor. And the reason I think I cannot is that Winkleman addresses the issue of does the parent have a right. All right? Winkleman in and of itself does not go to the question of what do you do when those rights are violated, and yet there is no IDEA remedy, as is the case in this situation. So what is the right here? The right, Your Honor, is what we've cited at various points in our briefing, the right for a parent to be consulted, the right to have proper procedures observed, and so on. Ms. Blanchard went through a number of hearings. She prevailed at a number of hearings, which established violations of IDEA and established violations of her rights as a parent. And it's from those violations ---- To the education. Yes. Yes. And it's our position here, Your Honor, that ---- What I have trouble with is how you transform her right to obtain an appropriate education for her child into a right to be compensated for the effort in doing that, which is entirely different in any administrative context, in any lawsuit. People expend time and energy, effort, aggravation, and so forth,  but ordinarily they're not compensated for their time and effort in getting to the end result. And that's the transformation I'm having difficulty making in your case. Your Honor, I have to acknowledge that decisions, including decisions from this Court with respect to attorney's fees in IDEA cases, make it difficult for us to pursue the reimbursement claim. But even though we ---- We are seeking damages, essentially. We are seeking damages for the emotional distress that Ms. Blanchard suffered. And where in any statute do you see a congressional intention to allow that kind of recovery, which is very unusual in any other statutory context?  Well, I think that's a very good question. It clearly is not part of IDEA. That is why we are able to present to this Court that IDEA does not provide a remedy for the injury suffered. And if ---- unless I've misread this Court's prior decision in Blanchard, IDEA does not provide an adequate remedy for Ms. Blanchard, and IDEA does not restrict rights under other statutes. So we're trying to figure out just what that means in practice. We submit, Your Honor, that when the Court said IDEA does not restrict rights under other statutes, the implication was that there may be a 1983 cause of action here. And while this Court did not say there was and did not say that Ms. Blanchard had a viable claim under 1983, it certainly left open the argument that she did. Okay. Thank you. You have about seven minutes left, and you wanted to ---- Thank you, Your Honor. Thank you. Good morning, Your Honors. I'm Jocelyn Weinman, attorney for the Defendant Applee Morton School District. May it please the Court. I'd first like to address the relevant decisions that have been decided since briefing was done in this case. The first of those is, of course, Winkleman. The legal issue decided in Winkleman was whether or not a parent can proceed pro se on a petition for judicial review from an IDEA administrative hearing. The Court concluded that the parent had a independent, comma, enforceable right. And I say it that way to distinguish it from the 1983 jurisprudence that refers to individually enforceable right. And I think that the Supreme Court meant something by that. It does not explain what it meant, but I think that that was an attempt to distinguish the independent, enforceable right to proceed pro se from the individually enforceable right to pursue a 1983 claim. As a result of its decision, Winkleman decided that the parent could proceed pro se on the petition for judicial review, but it did not decide other issues. It did not reference Section 1983 at all. Not anywhere in the opinion is it referenced. I believe that the concept of a 1983 action was in the minds of the Court because one is now able to listen to oral arguments on Westlaw, something we could never do before. And the Winkleman Supreme Court arguments, one of the justices specifically asked about that question, are you saying that this is an individually enforceable right to support a 1983 claim? That was the only reference to it, but I believe that that was in the Court's mind, and therefore, it's interesting, significant, that when it rendered its decision, it defined the right differently. Well, even if there's a, let's suppose that there is a parental right under the IDEA, does that matter to the end result from your perspective? No, it doesn't, Your Honor. An individual enforceable right is only the first factor that an individual must show to be able to pursue a 1983 action based on a violation of the Federal statute. The second thing they must show is that there's no reason in the intent that, under the statute, that it should be precluded. And I think in this case, the IDEA certainly does that. It presents an extremely complicated, significant, and indulgent comprehensive enforcement scheme, if you will. And I don't mean indulgent in terms of it not being appropriate for the issue at hand, but indulgent in terms of how widespread it is and what can happen. You know, what is a parent to do if a school district is obstinate in its refusal to do what is required for a child? And the parent may expend hours and lose money and lose sleep and all of that. What is a parent's remedy, if any, for that kind of behavior on the part of a school district? We submit that the IDEA does not provide a remedy for emotional distress or for lost profits, loss of income as is being sought here. The parent has a wide array of things they can pursue in a due process hearing and from the due process hearing they can take a petition for judicial review. They can retain counsel and, therefore, have their attorney's fees reimbursed. But there is nothing in the IDEA that leads to the conclusion that these, that the things sought by Mrs. Blanchard are recoverable. This is significant, and I think that this is the case. So a parent basically has to just take their lumps in the process, no matter how awful the process? Well, I would hope, Your Honor, that the administrative process and the petition for the judicial review process would provide relief if it's warranted. So we're ruling out the possibility of a State, State, of a tort action under State court, State law for outrageous conduct or deliberate tort of some sort? I personally ruled that out, Your Honor. It's not something that's been decided. The reason because due to that is because we have a statute that identifies the duty and provides a remedy. We have to rule that out. Pardon me? We have to rule that out. 1983 wouldn't, wouldn't, wouldn't create such a claim, but State law could recognize it, I would suppose. I can tell you that at least in the State of Washington there is no duty recognized for purposes of a tort action that these types of items would be recoverable or none that have been reported in. Yeah. I guess I'm not being very clear. I'd like to move to A.W. versus Jersey City, the Third Circuit opinion that was decided a couple of months ago. This, this decision is extremely significant because it is the first Federal Circuit court to apply the reasoning in Rancho Palos Verdes to an IDEA case. It's also significant because it abrogated W.B. versus Metula, a decision widely relied upon by courts that have determined that the 1983 remedy is available for certain violations of the IDEA. And because the underpinning of W.B. versus Metula has now been abrogated, it raises questions with respect to all the decisions in the Federal, in the Federal system that relied upon it as a basis for saying 1983 was available. What Jersey City does say is that any presumption that 1983 is available for a claimed violation of the IDEA can be rebutted. And it can be rebutted by showing that, one, Congress did not intend the IDEA to be enforced through Section 1983, that the court can look to the comprehensive enforcement scheme and determine if Congress left open the possibility of a Section 1983 claim, and also that the savings clause, the clause that this court referenced with Mr. Davis a few moments ago, that it, it, it is supposed to be taken at its face. It is not supposed to imply that there are other types of remedies that are available. And finally, Jersey City concluded that legislative history cannot be read to show that a 1983 remedy is preserved for IDEA violations. Jersey City concluded that Smith versus Robinson has not been overruled. And that's kind of a complicated statement because so many courts have believed that Smith versus Robinson has been overruled. And, in fact, that decision has been relied upon continually in cases all the way through Rancho Palos Verdes, as Smith representing a comprehensive enforcement scheme that precludes reliance upon Section 1983. Jersey City followed Sellers of the Fourth Circuit, Padilla in the Tenth Circuit, the Smith versus Robinson decision. It did not reference Catherine D., a Ninth Circuit decision from the 80s. I've never quite understood why that decision hasn't had, hasn't been of more interest to the special education bar in the State of Washington or this circuit. But the fact remains that it is still good law, relying upon Smith versus Robinson, which we now know has not been overruled. It says that the comprehensive enforcement scheme of the Education for All Handicapped Children's Act, now the IDEA, is what precludes resort to 1983. If I could take just a moment and move to the ADA and Rehabilitation Act claims that are referenced in Ms. Blanchard's opening brief. The ADA claim is a field trip issue. It's only argued in Ms. Blanchard's opening brief as being under the Rehab Act, but basically what it is is she's saying that the refusal of the district, the alleged refusal to allow Ms. Blanchard's son to go on a field trip, is what caused her emotional distress. We have not been able to locate a case under the ADA, which this claim was pled under, that would address this in any way. The Rehabilitation Act site referenced by Mr. Davis indicates that a parent has standing to pursue a 504 claim, but doesn't say that that leads us to a conclusion that the field trip issue turns into a viable rehab claim here. In any event, Ms. Blanchard would have been obligated to pursue the field trip issue through the due process hearing procedures, and in the record on appeal here, it is shown that the field trip issue was part of the third due process hearing, but Ms. Blanchard withdrew it, her request for hearing, before it occurred, and then ultimately the ALJ dismissed that hearing, which the field trip issue was within. I'm referring to clerk's papers 122, 125, and 105, and 106. These documents, this field trip issue is referenced in the Davis declaration that was in the district court. That being so, what we have here is Ms. Blanchard failed to exhaust the administrative remedy with respect to the field trip issue. Therefore, it is not available for a 1983 claim. Moving to the lost profits claim, which is pled under the Rehabilitation Act, it's referred in the briefing as a reimbursement claim under that act. It's very similar to a request for fees, attorney's fees, by parents who prevail in IDEA-based proceedings. That's what she's saying. She prevailed in a couple of the several due process hearings she pursued, and now she wants damages for it. I believe this issue is conclusively decided by the two new Ninth Circuit decisions that address that parent attorneys, attorneys who are parents, who represent their children in IDEA-based proceedings, are not entitled to an award of fees for the successful representation of their child. Just she is not an attorney, but she represented her child. It would be anomalous for the attorney parent not to be able to get fees for representation, but Mrs. Blanchard to be able to get lost profits, which is essentially the same as a fee, if you will, for having represented her child. Is there anything else I can offer for the Court? Any questions? I believe that's all my argument. Your Honor, if I correctly recollected your question, I would direct the Court's attention to the city of Rancho Palos Verdes, which is cited, and does indicate that where a person is in the class of people who have protected rights, as Ms. Blanchard is, there is a rebuttable presumption that Section 1983 is available as a remedy. And the question then, has this presumption been rebutted by the school district here? We submit that it has not, that this is not a case where Ms. Blanchard is trying to invoke 1983 to get around the IDEA process, the administrative remedies available. Because as this Court has previously found, IDEA provides no remedies for Ms. Blanchard. And as this Court has previously found, IDEA is not the exclusive source of rights and remedies available for parents of children in special education programs. Well, if the parent is seeking a kind of a quantum meroit reimbursement for work and labor done and so on, that's not a federal question, that's a state law question, isn't it? I think it is both. I had never really thought of this issue in terms of quantum merit, but I can see how the Court might perceive it in that way. I think that the court claims that it's ex contractu rather than ex delicto, isn't it? I think you're right, Your Honor. And I think, as I acknowledge, this Court's previous decisions about recovery of attorney's fees make it difficult for us now to pursue the claim for reimbursement in this situation. But that's not all we're asking in terms of a remedy. We're also asking that the Court determine whether, in fact, Ms. Blanchard experienced emotional distress that can be attributed to the school district, and if so, should she be compensated for that? And I see that as a question distinct from the reimbursement issue for the time that she spent in representing her son. So as we see it, Your Honors, this case hangs on the question of whether the presumption of an action of availability of an action under 1983 has, in fact, been rebutted by the school district. We say it has not because the school district cannot point to anything expressed in IDEA that forecloses the possibility of a 1983 claim. The cases that have found no 1983 claim, Your Honor, we submit are cases where a parent is trying an end run around IDEA when the IDEA remedies and procedures would provide some kind of remedy, even if not exactly the form of remedy the parent sought. And in those cases, it is understandable, and I think quite proper, for the Court to say, stop, you can't do that. But when the Court confronts a situation where IDEA recognizes a right in parents, as the Supreme Court has said it does, and yet provides no remedy at all, is the Court going to tell the parent that in that situation, I'm sorry, you simply have to walk away? We don't think that the law requires that kind of direction. We think that the law leaves open the possibility in this situation, and ones like it, for a parent to pursue a 1983 claim and get redress for the injury that they suffered, if they can prove that injury appropriately to a court of law. And we still haven't reached the point where Ms. Blanchard has had an opportunity to present her evidence and present her argument that, in fact, she did suffer a violation in 1983. We're still at a preliminary stage. What would you show other than, I don't understand that, what would you show other than what is alleged, that she lost money in her business because of the time she had to spend and that she suffered great emotional distress? Again, Your Honor, I think it's... We'll assume that for purposes of this argument. Yes, I think at this point you can assume that, but she still would have an obligation, ultimately, to prove that she had, in fact, suffered emotional distress, that there were violations of IDEA, her rights under that statute, and that she suffered as a result. So that remains an issue of fact to be tried, one that I think is a reason that this Court should remand the case for further inquiry. So we're asking the Court here to look at this overall picture, ask itself, what do you do when there is a right, but in IDEA no remedy at all? Is it fair to tell the parent that in that situation, I'm sorry, there's nothing we can do, or is it not fairer to say, to recognize that there is a rebuttable presumption of a right of action under 1983, ask whether that presumption has been rebutted, in this case we say it is not, and then proceed accordingly? We ask the Court to reverse the decision below and award reasonable attorney's fees and costs on this appeal. We respectfully submit that in the absence of a rebuttal of the presumption, we have to go forward on the basis that there is a 1983 cause of action potentially available, and now Ms. Blanchard has to prove that she has a right to invoke it. Thank you, Your Honors. Thank you. The case just argued is submitted for decision. Again, we thank counsel for coming to Portland, and the case is ordered submitted for decision. This Court for this session stands adjourned.
judges: Schroeder, Goodwin, Graber